JAMES F. HUWE, Plaintiff-Appellant, *v.* COMMONWEALTH EDISON COMPANY, Defendant-Appellee.

(No. 74-52;

Second District (2nd Division)—July 2, 1975.

Robert F. Casey and George E. Krippner, both of Geneva, for appellant.

Donald L. Puckett and Peter K. Wilson, both of O'Brien, Burnell, Puckett & Barnett, of Aurora, for appellee.

Mr. JUSTICE DIXON delivered the opinion of the court:

The plaintiff, James Huwe, sought to recover damages for personal injuries occasioned by alleged negligence of defendant in installing and maintaining its power lines. A jury returned a verdict for the defendant.

The Circuit Court of Kane County entered judgment on the verdict and plaintiff appeals.

This matter was tried before a jury for a substantial period of time extending from May 21 through June 6, 1973. On the morning of June 7, 1973, closing arguments were presented and the jury was instructed at about 2:00 in the afternoon. They were taken to lunch and began deliberations at about 3 P.M. At 6:40 P.M., the jury foreman advised the bailiff that they were stalemated; the bailiff told the jury they would have to go back and work a little longer and then he reported to the court.

The trial judge had made arrangements to attend a judicial conference and after instructing the jury had left for the conference.

The chief judge had designated Judge Thomas Burke to temporarily preside. Shortly after 6:40 P.M., both plaintiff and defendant moved the court to declare a mistrial. Judge Burke denied both motions.

At about 10:25 P.M., Chief Judge Krause made the following statement for the record:

> "* * * upon Judge Suhler's departure for Peoria to a conference—Judicial Conference, I designated Judge Burke to take over in my position as Chief Judge and that I came and relieved Judge Burke. I guess I have assigned myself here."

Judge Krause suggested that the jury be allowed to separate and complete deliberations the following morning. When asked if he had any objection to that procedure, plaintiff's counsel replied that he did not care. The judge further advised counsel that he proposed to give the deadlocked-jury instruction from Illinois Pattern Jury Instructions and asked if there was any objection. Plaintiff's counsel stated that he had no objection.

The jury was returned to the box at 10:40 P.M., and asked if they had reached a verdict. Receiving a negative reply, the court gave the instruction and returned the jury to deliberations. At 11:10 P.M., the jury was sent home. They returned at 9 A.M. the next morning and reached a verdict at 10:25 A.M. on June 8, 1973.

On appeal plaintiff contends that error was committed in the denial of the motion for mistrial.

He argues that the parties, by presenting a joint motion for mistrial, stipulated that substantial justice could not be obtained from this jury, that after the jury was coerced by the bailiff that a verdict could only be reached by a surrender of conscientious conviction, that the custodial judge had no basis for an exercise of discretion and, therefore, his action was arbitrary as a matter of law.

■■ A party is entitled to the judgment of one judge up to the retirement of the jury to consider their verdict, but a judge may turn the case

over to another judge after the jury has retired to begin its deliberations. (*People v. Mays*, 23 Ill.2d 520.) In Illinois this act has long been regarded as a routine matter not requiring the presence of the trial judge. (*Chicago & Alton R.R. Co. v. Merriman*, 86 Ill.App. 454, 455; Annot., 83 A.L.R.2d 1032, 1039, sec. 2(e) (1962).) And especially in a civil case where the complaining party made no objection thereto. 75 Am. Jur. 2d *Trial*, sec. 48 (1974).

If a motion or other matter develops which requires a personal knowledge of the case, the trial judge should be present. In this case the change of judges, after the retirement of the jury to consider their verdict, did not cause the slightest harm to appellant. The substitute judge knew exactly what the bailiff said to the jury; he was informed as to the length of time the cause had been on trial and the amount of time the jury had been deliberating.

■■■ The mere fact that the jurors declare their inability to agree does not satisfy the test as to when they may be discharged, nor can a joint motion by the parties control the length of deliberations. Mere inability to agree is not the test. It must appear from the length of time they have been deliberating, and their inability to agree, that it may fairly be presumed that they will never agree. (76 Am. Jur. 2d *Trial* sec. 1109 (1975).) How long a jury is to be kept in deliberation is a matter resting in the sound discretion of the judge. (*People v. Daily*, 41 Ill.2d 116, 121.) His action in refusing to discharge them at their request, or sending them back for further deliberation, does not as a rule amount to coercion of the verdict. (Annot., 93 A.L.R.2d 627, 639, sec. 4 (1964); Annot., 85 A.L.R. 1420, 1421 (1933).) The reasonableness of the deliberation period depends on such factors as the length of the trial, the nature or complexity of the case, the volume and nature of the evidence, the presence of multiple counts or multiple defendants. See ABA Standards Relating to Trial by Jury sec. 5.4(b) (Approved Draft 1968), adopted in Illinois— *People v. Prim*, 53 Ill.2d 62, 76; 76 Am. Jur. 2d Trial sec. 1069 (1975).

■■ Here the case was tried for a substantial time, probably in excess of 10 days before the jury. The jury has been out only 3 hours 40 minutes when the motions were made. The judge exercised his discretion in directing the jury to continue its deliberations. It cannot be realistically argued the trial court coerced the jury into returning a verdict.

We affirm the judgment.

Judgment affirmed.

RECHENMACHER, P. J., and T. MORAN, J., concur.